### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:23-cr-116 (OAW) |
| | : | |
| v. | : | |
| | : | |
| NICHOLAS DEFELICE | : | November 8, 2023 |

### GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS

Nicholas DeFelice is charged with violating federal firearm laws in a two-count indictment. Count one charges DeFelice with manufacturing and dealing firearms without a license. Count two charges DeFelice with possession of unregistered short barrel rifles and an unregistered silencer. DeFelice has filed a motion to dismiss. He claims that the charges against him violate the Second Amendment. DeFelice is wrong.

DeFelice's motion is based entirely on the erroneous assumption that the government bears the burden of justifying the charges in historical context. This argument evinces fundamental misunderstanding of *New York Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), which sets forth a multi-step analysis for determining whether a firearm regulation violates the Second Amendment. Under *Bruen*, Courts must first determine the parameters of a defendant's indicted conduct and whether it falls under the plain text of the Second Amendment. *Id.* at 2129-2130. Courts only advance to the second step of the analysis if the plain text of the Second Amendment grants protection to the challenged conduct. That is when courts assess whether the

regulation is consistent with the Nation's historical tradition of firearm regulation. *Id.* at 2131

DeFelice's motion fails at step one: the plain text of the Second Amendment does not cover the manufacture or sale of firearms. It does not protect the possession of short-barrel rifles or silencers either. This is fatal to DeFelice's claim, and the analysis should stop there. But even if the Court proceeds to the second step of the analysis, it must still find the challenged statutes constitutional because they are consistent with historical firearm regulation in this country.

The Second Amendment does not protect DeFelice from these charges. The Court must deny his motion.

## BACKGROUND

On July 11, 2023, a federal grand jury in New Haven returned a two-count indictment charging DeFelice with violations of federal law. Count one alleges that DeFelice violated 18 U.S.C. §§ 922(a)(1)(A), 923, and 924(a)(1)(D) by engaging in the business of dealing and manufacturing firearms without the proper license between approximately January 2020 and February 17, 2022. Count two alleges that DeFelice violated 26 U.S.C. §§ 5841, 5845, 5861(d), and 5871 on February 16, 2022 by possessing two unregistered short-barrel rifles and an unregistered silencer.

## STANDARD

Federal Rule of Criminal Procedure 12(b) permits defendants to file pretrial motions raising "any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1); *United States v. Sampson,*

2

898 F.3d 270, 278–79 (2d Cir. 2018). "In ruling on a motion to dismiss, a court views the indictment as a whole and assumes its factual allegations to be true." *United States v. Litvak*, No. 3:13-cr-19 (JCH), 2013 WL 5740891, at *2 (D. Conn. Oct. 21, 2013) (citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952)).

## ARGUMENT

### I. DeFelice Misapplies *Bruen*

DeFelice's reliance on *Bruen* is fundamentally at odds its central holdings. In *Bruen*, the Supreme Court held, "consistent with *Heller* and *McDonald*, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2122, (2022). In so holding, the Supreme Court "reiterate[d] that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2129-2130.

The Supreme Court recognized that the first step of analyzing the "plain text" of the Second Amendment was "[i]n keeping with *Heller*." *Id.* at 2126. But the Court rejected the post-*Heller* test that had developed among the circuit and district courts at the second step of the analysis, in which courts applied so-called means-end scrutiny (i.e., strict or intermediate scrutiny) to laws that were found to fall within the Second Amendment's "plain text." *Id.* at 2126-2127. Instead, *Bruen* clarified that

3

analysis of the "Nation's historical tradition of firearm regulation," not means-end scrutiny, is the appropriate standard at the second step. *Id.* at 2127.

DeFelice distorts *Bruen* in fundamental ways that pervade and undermine his motion. He broadly describes *Bruen* as "a revolutionary change in how courts must analyze the Second Amendment," without recognizing any distinction between laws that are covered by the plain text of the Second Amendment and those that are not. Def. Mot. at 5. He recites the "two-step, burden shifting approach" one time in his motion. Def. Mot. at 6. Yet everything that comes before and after presumes only the second step applies. He does not provide any analysis whatsoever of the Second Amendment's plain text as it pertains to the charges in this case, and erroneously concludes that the government bears the "heavy burden" from the outset of establishing the charged statutes satisfy the historical tradition analysis. *Id.*

For example, DeFelice claims that "*Bruen* makes clear that the government must affirmatively establish that a firearms regulation is consistent with this text and history of the Second Amendment for such regulation to pass constitutional muster." Def. Mot. at 7. But this ignores step one altogether. DeFelice repeats this error throughout his entire motion, impermissibly shifting the burden to the government. *Id.* at 11-12 (arguing that the government cannot identify a founding era analogue to manufacturing firearms without a license); *id.* at 12 (arguing that the government cannot identify a founding era analogue justifying regulation of short-barrel rifles); *id.* (arguing that the government cannot identify a founding era analogue justifying regulation of silencers). In presuming without any analysis that

4

the charged conduct implicates the Second Amendment, DeFelice ignores the Supreme Court's clear and repeated articulation of what the "plain text" of the Second Amendment covers. This sinks his motion.

Drawing upon *Heller* and *McDonald*, *Bruen* reiterated that the "plain text" of the Second Amendment – in particular, "the right of the people to keep and bear Arms" – "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Bruen*, 142 S. Ct. 2127 (quoting *Heller*, 554 U.S. at 592). The Supreme Court repeatedly spoke of the covered conduct as "an individual right to self-defense." *Id.*; *see also, e.g., id.* at 2139 (Second Amendment "'surely elevates above all other interests the right of law abiding, responsible citizens to use arms' for self-defense" (quoting *Heller*, 554 U.S. at 635)); *id.* at 2133 ("As we stated in *Heller* and repeated in *McDonald*, 'individual self-defense is the 'central component' of the Second Amendment right.'"); *id.* at 2132 ("*Heller* further confirmed that the right to 'bear arms' refers to the right to 'wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offense or defensive action in a case of conflict with another person.'"); *id.* at 2135 ("self-defense is 'the central component of the [Second Amendment] right itself'").

Three of the Justices in the *Bruen* majority (Justices Alito and Kavanaugh and Chief Justice Roberts) authored or joined in concurrences stating their view that the holding was indeed narrowly drawn. Justice Alito emphasized, "[a]ll that we decide in this case is that the Second Amendment protects the right of lawabiding people to carry a gun outside the home for self-defense." *Id.* at 2159 (Alito, J. concurring).

Justice Kavanaugh, joined by Chief Justice Roberts, wrote separately to "underscore two important points about the limits of the Court's decision," reiterating that "individual self-defense is 'the central component' of the Second Amendment," *id.* at 2161 (Kavanaugh, J. concurring) (quoting *McDonald*, 561 U.S. at 767 and *Heller*, 554 U.S. at 599), and "[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations." *Id.* at 2162 (quoting *Heller*, 554 U.S. at 636).

Thus, the majority's repeated focus on the Second Amendment's "central component" of an individual right to self-defense and the concurring Justices' express limitations of their views to that narrow holding underscore the fallacy of DeFelice's argument here. Without any acknowledgment of his burden at step one, DeFelice presumes the dealing and manufacturing of firearms and possession of short-barrel rifles and silencers are similarly covered by the "plain text" of the Second Amendment. DeFelice is wrong as to this fundamental point.

Under the proper framework, both counts of the indictment pertain to conduct that is not implicated by the Second Amendment, and thus no further analysis - of "historical tradition" or otherwise - is necessary. But even if DeFelice were able to get passed the first step of the analysis (which he cannot), his challenge would still fail.

## II. DeFelice's Challenge to Count One Must Fail

§ 922(a)(1)(A) does not implicate the Second Amendment at all. But even if it did, regulating the manufacture and sale of firearms comports with this country's history and tradition of firearm regulation.

The statute forbids anyone "except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of manufacturing, or dealing in firearms." 18 U.S.C. § 922(a)(1)(A). "Engaged in the business" is a defined term: "as applied to a manufacturer of firearms, a person who devotes time, attention, and labor to manufacturing firearms as a regular course of trade or business with the principal objective of livelihood and profit through the sale or distribution of the firearms manufactured" 18 U.S.C. § 921(1)(21)(A). As applied to a dealer in firearms, "engaged in the business," means a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms. 18 U.S.C. § 921(1)(21)(C). "[T]o predominantly earn a profit," is also defined, meaning that the intent underlying the sale or disposition of firearms is predominantly one of obtaining pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection. 18 U.S.C.A. § 921(a)(22).  None of this violates the right "to keep and bear Arms." U.S. Const. amend. II.

DeFelice not even try to meet his burden of showing that the conduct alleged in count one is covered by the plain text of the Second Amendment. He would fail if he did. The statutes require only requires individuals who wish to sell or manufacture firearms commercially to obtain a license. Individuals otherwise remain free to

7

possess or acquire firearms, and even to sell or manufacture firearms for a non-commercial purpose. This does not implicate, much less infringe upon, law-abiding citizens' right to possess and carry firearms for self-defense.

As previously discussed, *Bruen* reiterated the holdings from *Heller* and *McDonald* that "individual self-defense is the 'central component' of the Second Amendment right." *Bruen*, 142 S. Ct. 2133 (quoting *Heller* and *McDonald*) (emphasis in original). *Bruen* did not extend the Supreme Court's interpretation of the bounds of the Second Amendment any further, including with respect to the unlicensed dealing or manufacturing of firearms for sale alleged here.

To the contrary, in their concurrence, Justice Kavanaugh and Chief Justice Roberts reaffirmed the Supreme Court's recognition in *Heller* and *McDonald* that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 2162 (quoting *Heller*, 554 U.S. at 626-27, and *McDonald*, 561 U.S. at 786). Justice Alito similarly emphasized the Supreme Court's "holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun." *Id.* at 2157. Justice Alito's concurrence is especially noteworthy, as he wrote the majority opinion in *McDonald* in which the Court made a point to "repeat th[e] assurances" from *Heller* that the Court's rulings did not "cast doubt" on the regulation of "the commercial sale of arms," which *Heller* Court described as "presumptively lawful regulatory measures." *McDonald*, 561 U.S. at 786 (quoting *Heller*, 554 U.S. at 626-27, 627 n.26).

Indeed, following *Bruen*, district courts to reach the issue have rejected challenges to the constitutionality of § 922(a)(1)(A).[1] *See, e.g., United States v. Deare*, No. 6:21-cr-00212-01, 2023 WL 4732568, at *2 (W.D. La. July 24, 2023) (agreeing that licensing/recordkeeping requirements of 18 U.S.C. § 922(a)(1) "do not affect an individual's rights to possess firearms"); *United States v. Kazmende*, No. 1:22-cr-236-SDG-CCB, 2023 WL 3872209, at *5 (N.D. Ga. May 17, 2023), report and recommendation adopted, No. 1:22-cr-00236-SDG, 2023 WL 3867792 (N.D. Ga. June 7, 2023) (The Second Amendment "simply does not extend to the commercial sale of firearms."); *United States v. McNulty*, No. 22-cr-10037-WGY, 2023 WL 4826950, at *4 (D. Mass. July 27, 2023) (same); *United States v. Flores*, — F. Supp. 3d —, 2023 WL 361868, at *4-5 (S.D. Tex. Jan. 23, 2023) (same); *United States v. King*, No. 5:22-cr-00215-001, 2022 WL 17668454, at *3 (E.D. Pa. Dec. 14, 2022) (same); *United States v. Tilotta*, 2022 WL 3924282, at *6 (S.D. Cal. Aug. 30, 2022) ("[T]he natural reading of 'keep and bear arms' does not include the ability to sell or transfer firearms unrestricted."). These cases got it right. *Bruen* did not assign a new meaning to the Second Amendment that would confer a right to engage in firearms commerce without a license.

In sum, because § 922(a)(1)(A) does not "prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right," it is no different than the licensing regimes that *Bruen* approved. 142 S. Ct. at 2138 n.9. The regulated conduct

---

[1] As far as the government is aware, no court of appeals has addressed the constitutionality of this statute following *Bruen*.

9

falls outside the Second Amendment. DeFelice's challenge to count one fails at the first step of the *Bruen* analysis.

But even if the Court were to reach the second step of the *Bruen* analysis, DeFelice's motion must still fail. Regulating the commercial dealing of firearms is "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. "[C]olonial governments substantially controlled the firearms trade." *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017). For example, Connecticut banned residents from selling firearms outside the colony. *Id*. Virginia specified that people were at "liberty to sell armes [sic] and ammunition to any of his majesties loyall [sic] subjects inhabiting this colony," but that right did not extend to sales to others. *Id*. at 685 n.18 (emphasis added; quotation marks omitted). A 1631 Virginia law required the recording all new arrivals to the colony and the recording "of arms and munitions." Robert J. Spitzer*, Gun Law History in the United States and Second Amendment Rights*, Law & Contemp. Probs., 2017, at 55, 76–77. Massachusetts and other colonies and states required licenses to manufacture or transport gunpowder, which "was essential to the operation of firearms at that time." *Miller et al v. Bonta*, et al., No. 3:19-cv-1537 (S.D. Cal. 2022) (Dkt. 137-3, at 22) (Declaration of Prof. Saul Cornell); cf. *Bruen*, 142 S. Ct. at 2149 (citing article by Cornell); *see also* Colonial Laws of Massachusetts Reprinted from the Edition of 1672, at 126 (1890) (1651 statute) ("no person . . . shall transport any Gun-powder out of this Jurisdiction, without license first obtained from some two of the Magistrates"); 15 The Public Records of the Colony of Connecticut 191 (1890) (1775 statute) (no "gun-

powder made and manufactured . . . shall be exported out of the [Colony] without . . . license"); The Charter and Ordinances of the City of Providence, with the General Assembly Relating to the City 37 (1835) (1821 law) (prohibiting selling gunpowder within the town of Providence "without having a license therefor"). Additionally, in the early republic, Massachusetts and Maine required proof of all gun barrels manufactured in the state and imposed criminal fines for selling firearms that had not been proved and marked. *See* Laws of the Commonwealth of Massachusetts from November 28, 1780 to February 28, 1807, at 259-60 (1807); Laws of the State of Maine 546 (1830); *see also Heller*, 554 U.S. at 605 (observing that examining the "public understanding of a legal text in the period after its enactment or ratification" is "a critical tool of constitutional interpretation" (emphasis omitted)). Alabama imposed a tax on firearms dealers in 1898. Spitzer, Law & Contemp. Probs., 77.

These examples establish that § 922(a)(1)(A) is "relevantly similar" to historical statutes. *Bruen*, 142 S. Ct. at 2132. *Bruen* made clear that the government need only identify a "historical analogue, not a historical twin." *Id.* at 2133. The ultimate question is "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 2133. As explained above, § 922(a)(1)(A) places no burden on the right of armed self-defense. It only burdens dealing and manufacture of firearms. And the licensing requirement imposed is comparable in its justification to the historical laws cited above, which regulated various aspects of the commercial sale of firearms and gunpowder. Because § 922(a)(1)(A) is consistent with the "historical tradition of

11

firearm regulation," the burdened conduct "falls outside the Second Amendment's unqualified command," *Bruen*, 142 S. Ct. at 2126, and DeFelice's motion fails on this basis, as well.

The Court should deny DeFelice's motion as to count one of the indictment.

### III.  DeFelice's Challenge to Count Two Must Fail

DeFelice is charged in count two with violating the National Firearms Act by possessing two unregistered short-barrel rifles and an unregistered silencer. His constitutional challenge to this charge fails for the numerous reasons explained below.

The National Firearms Act ("NFA") is a comprehensive taxing scheme that regulates the manufacture, sale, and transfer of certain especially dangerous and concealable weapons. Under the NFA, the word "firearm" is defined to include only those weapons listed in 26 U.S.C. § 5845(a). As relevant here, the list includes rifles that have a barrel less than sixteen inches and silencers. *See* 28 U.S.C. § 5845(a); 18 U.S.C. 921(25) (defining a "firearm silencer" as including "any device for silencing, muffling, or diminishing the report of a portable firearm"). Under the NFA, it is unlawful for any person or entity to receive or possess any NFA regulated firearm that is not registered. *See* 26 U.S.C. § 5861(d).[2]

---

[2] Before any NFA-regulated firearm or weapon is transferred from one person or entity to another, the transferor and transferee must complete an application form, the form must be approved by ATF, and the transferor must pay a transfer tax of $200. *See* 26 U.S.C. §§5811-5812.

**Short-barrel rifles are not protected under the Second Amendment**. It is well established that the Second Amendment does not protect possession of short-barrel rifles, and nothing in *Bruen* says otherwise. The plain text of the Second Amendment does not guarantee an unequivocal right to possess a short-barrel rifle. Over 80 years ago, in *United States v. Miller*, the Supreme Court determined that the plain text of the Second Amendment does not guarantee a right to possess a short-barrel shotgun, stating that "we cannot say that the Second Amendment guarantees the right to keep and bear" an unregistered sawed-off "shotgun having a barrel of less than eighteen inches in length." 307 U.S. 174, 175-78 (1939); *Heller*, 554 U.S. at 625 (reading *Miller* to say that the "Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barrel shotguns."). A logical extension of that prohibition would encompass short-barrel rifles. *See United States v. Cox*, 906 F.3d 1170, 1185-86 (10th Cir. 2018) (comparing short-barrel rifles to short-barrel shotguns and finding the possession of a short barrel rifle falls outside the Second Amendment guarantee).

Second, possession of a short-barrel rifle is not grounded in this country's historical tradition. *Heller* held that the Court's reading in *Miller* -- that the Second Amendment protects only the "sorts of weapons" that were "in common use at the time" and does not protect "the carrying of dangerous and unusual weapons" -- "accords with the historical understanding of the scope of the right." *Id*. Thus, DeFelice's argument that there is "no historical analogue" for his prosecution under § 5861(d) conflicts with *Miller* and *Heller*.

*Bruen* expressly endorsed *Miller* and *Heller* and thus does not call for a different conclusion. 142 S. Ct. at 2143; *see also id*. at 2162 (Kavanaugh, J., concurring). Indeed, *Bruen* reiterated that there is no "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." 142 S. Ct. at 2128 (quoting *Heller*, 554 U.S. at 626); *see also United States v. Cox*, 906 F.3d 1170, 1185 (10th Cir. 2018) (noting that a long gun with a shortened barrel is both dangerous, because "its concealability fosters its use in illicit activity," and unusual, "because of its heightened capability to cause damage." (quoting *United States v. Marzzarella*, 614 F.3d 85, 95 (3d. Cir. 2010)).

Further, § 5861(d) is not a blanket prohibition on firearms, but rather codifies the NFA's registration regime for certain types of firearms, including the short-barrel rifles at issue in this case. *See Cox*, 906 F.3d at 1179 (discussing at length the National Firearms Act taxation and licensing scheme for short-barrel weapons). *Bruen* did not undermine this regime; rather, *Bruen* specifically approved of licensing regimes for carrying firearms if they are open to ordinary, law-abiding citizens. 142 S. Ct. at 2161 (Kavanaugh, J., concurring). Here, § 5861(d) does not require "demonstrating to government officers some special need" to possess a short-barrel rifle in the discretionary manner that *Bruen* held unconstitutional. 142 S. Ct. at 2156.

Finally, several courts around the country have similarly rejected challenges to prosecutions under § 5861(d) for possessing unregistered dangerous weapons. *See e.g.*, *United States v. Holton*, No. 3:21-CR-0482-B, 2022 WL 16701935, at *3 (N.D. Tex. Nov. 3, 2022) (finding the National Firearms Act constitutional because it

regulates dangerous and unusual weapons not protected under the Second Amendment); *United States v. Royce*, No. 1:22-CR-130, 2023 WL 2163677, at *3 (D.N.D. Feb. 22, 2023); *United States v. Grey*, No. 18-CR-00412-CAS-1, 2018 WL 4403979, at *13 (C.D. Cal. Sept. 13, 2018) (holding that the registration requirement does not violate the Second Amendment); *see also United States v. Miller*, 11 F.4th 944, 955 (8th Cir. 2021) (rejecting challenge to NFA's prohibition of short-barrel shotguns); *United States v. Wilson*, 979 F.3d 889, 903 (11th Cir. 2020) (rejecting challenge to 26 U.S.C. §§ 5861(d) and 5871, prohibiting possession of unregistered sawed-off shotgun, as barred by *Miller*).

The plain text does not guarantee defendant the right to possess a short-barrel rifle and such a prohibition is well within the "historical tradition of prohibiting the carrying of 'dangerous and usual weapons.'" *Heller*, 554 U.S. at 627. *Bruen* does not change that result. DeFelice's conduct falls outside the Second Amendment's protections.

**Silencers are not protected under the Second Amendment**. Like short-barrel rifles, DeFelice does not have a Second Amendment right to possess a silencer. But, unlike rifles, silencers are not even considered "arms" within the meaning of the Second Amendment. *See Heller*, 554 U.S. at 582 (explaining that the Second Amendment applies to "bearable arms."). While the Second Amendment's protection may foreseeably extend to items necessary to use "bearable arms," for example ammunition or ammunition magazines, it does not extend to everything related to a firearm. A silencer is not necessary to make a firearm operable; rather, it is

15

exclusively a means to reduce sound omitted from an already operable firearm. "A silencer is a firearm accessory; it's not a weapon in itself (nor is it 'armour of defence')." *United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018*); see United States v. Hasson*, 26 F.4th 610 (4th Cir. 2022) ("Silencers generally have no use independent of their attachment to a gun. They do not fire bullets on their own and do not contain a slide, trigger, firing pin, cartridge case, barrel, primer, or gunpowder.").

Several courts have reached this conclusion. *See Cox*, 906 F.3d at 1187 (holding "[t]hus, because silencers are not 'bearable arms,' they fall outside the Second Amendment guarantee."); *See, e.g., United States v. McCartney*, 357 F. App'x 73, 76 (9th Cir. 2009) (holding that silencers are not protected by the Second Amendment); *United States v. Al-Azhari*, No. 8:20-CR-206-T60AEP, 2020 WL 7334512 (M.D. Fla. Dec. 14, 2020) (holding that "the Court finds the reasoning in Cox persuasive and concludes that the NFA's prohibition on silencers is constitutional."); *Hasson*, 26 F.4th 610 at *13 (explaining that "there is no evidence that silencers are 'so critical' to firearm ownership that firearms cannot be used effectively without them. Although silencers may improve the usage of a firearm, they are not necessary, and they are therefore not protected by the Second Amendment."); Stepp-Zafft, 733 F. App'x at 329–30 (on plain error review, finding no plain error where district court failed to dismiss unregistered silencer charge on Second Amendment grounds); U*nited States v. McCartney*, 357 F. App'x 73, 76 (9th Cir. 2009) (holding that silencers are not protected by the Second Amendment). Consistent with this authority, this Court

16

should conclude that silencers are not "arms," and are therefore not protected under the Second Amendment.

But even if silencers were considered "arms," they would still not be protected under the Second Amendment because, like short-barrel rifles, they are "dangerous and unusual weapons" under *Heller*. The silencer was invented in the early 1900's and patented in 1908. Robert J. Spitzer, *Gun Accessories and the Second Amendment: Assault Weapons, Magazines, and Silencers*, Law & Contemp. Probs., 2020, at 231, 246. "Objections to civilian use of silencers appeared almost immediately." *Id.* By 1909, the first state, Maine, had banned the sale or possession of silencers, and New Jersey followed two years later. *Id.* at 247. The primary concern about unregulated possession of silencers was crime, from both typical criminals and hunters/poachers. *Id.* "From 1909 to 1936, at least fifteen states enacted silencer restrictions," including Arizona, Louisiana, Michigan, North Carolina, Pennsylvania, and Wyoming. *Id.* at 248 n. 123. "These early restrictions underscored the two primary concerns about unregulated possession of silencers: that they would be used by criminals seeking to avoid detection, and that they would be used by hunters with a similar motivation." *Id.* at 247 (emphasis added). Ultimately, the inventor of the silencer and his company "discontinued manufacturing silencers because of the popular impression that this invention was an aid to crime." *Id.* at 248 n. 125 (Maxim Bans Gun Silencer, N.Y. TIMES, May 8, 1930, at 27).

**The NFA does not infringe on the right to bear arms.** The NFA's registration and taxation requirements, which applied to the short-barrel rifles and

silencer that DeFelice possessed, do not "infringe" on the right to keep and bear arms. As noted, under *Bruen*, the government only needs to address historical analogs "[w]hen the Second Amendment's plain text covers an individual's conduct." *Bruen*, 142 S. Ct. 2129-30. The Second Amendment does not provide that the right to keep and bear arms cannot be "burdened in any way," but that it shall not be "infringed."

Administrative burdens that stop far short of disarming law-abiding citizens do not "infringe" the right to keep and bear arms. *See* Webster's 1828 American Dictionary of the English Language (defining "infringe" as "[t]o break; to violate; to transgress" and "[t]o destroy or hinder"). Here, individuals can lawfully own and transfer short-barrel rifles and silencers if they follow the registration and taxation requirements. *See generally* 26 U.S.C. Ch. 53. *Heller* and *Bruen* make clear that the government cannot prohibit the in-home possession and public carrying of firearms, at least for self-defense purposes.

Justice Kavanaugh's concurrence emphasized that states can constitutionally require license applicants to "undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements." *Bruen*, 142 S. Ct. at 2162. The NFA is no more burdensome that the requirements Justice Kavanaugh contemplated. It does not ban short-barrel rifles or silencers: it requires registration, documentation, and the payment of appropriate, reasonable taxes. *See* 26 U.S.C. Ch. 53. Thus, such a scheme is constitutional, even if there is no historical analog to it.

**The NFA's registration and taxation requirements are consistent with the nation's history and tradition.** Based on the numerous reasons above, this Court does not need to consider whether the NFA's registration and taxation requirements are consistent with the nation's historical tradition of firearm regulation. *See Bruen*, 142 S. Ct. 2129-30. But if the Court were to engage in this analysis, the NFA's registration and taxation requirements fall into the historical tradition as shown in the historical analysis regarding count one above.

Like those early laws, the NFA's registration and taxation requirements do not prohibit manufacturing or selling firearms. Instead, the statute at issue merely imposes record-keeping and attendant payment requirements to document the items to help ensure that they can be traced. This falls squarely within the bounds of the historical regulation of firearms. The practice of the colonies and the United States of regulating commerce in firearms provides a sufficient historical analogue to the NFA.

The Court should deny DeFelice's challenge to count two.

## CONCLUSION

For the reasons above, the Court must deny DeFelice's motion to dismiss.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

 /s/ *Nathaniel J. Gentile*

NATHANIEL J. GENTILE
ASSISTANT U.S. ATTORNEY

FEDERAL BAR NO. ct28860
157 CHURCH STREET, FLOOR 25
NEW HAVEN, CT 06510
203-821-3700

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ *Nathaniel J. Gentile*
NATHANIEL J. GENTILE
ASSISTANT U.S. ATTORNEY