UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff*,<br><br>v.<br><br>NICHOLAS DEFELICE,<br>    *Defendant*. | )<br>)<br>)  Case No. 3:23-cr-116-OAW<br>)<br>)<br>)<br>)<br>)<br>) |

### OMNIBUS RULING

**THIS ACTION** is before the court upon Defendant Nicholas DeFelice's motion for bill of particulars, ECF No. 17, and motion to dismiss, ECF No. 18.  The court has reviewed the motions, the government's oppositions to the motions, ECF Nos. 23, 24, Defendant's reply in support of the motion to dismiss, ECF No. 28, and the record in this case.  For the reasons discussed herein, both defense motions are **DENIED.**

### I.    BACKGROUND

On July 11, 2023, a federal grand jury in New Haven returned a two-count indictment charging Mr. DeFelice with violating federal law.  *See* Indictment, ECF No. 1.

Count One alleged that Mr. DeFelice dealt and manufactured firearms without a license to do so, from in or about January of 2020 until approximately February 17, 2022, in violation of 18 U.S.C. §§ 922(a)(1)(A), 923(a), and 924(a)(1)(D).  *See id.* at 1.

Count Two alleged that on or about February 17, 2022, Mr. DeFelice possessed firearms and silencers not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5841, 5845, 5861(d), and 5871.  *See id.*  The indictment identified three such unregistered items in particular:

1

- one Anderson Manufacturing, AM-15, multi-caliber rifle with a barrel of less than sixteen inches in length and bearing serial number 18302829;
- one Colt, M4 Carbine, 5.56 caliber rifle with a barrel of less than sixteen inches in length and bearing a serial number LE568125; and
- one silencer, further described as a metal, cylindrical device designed to silence or to diminish the report of a firearm.

An arrest warrant was issued upon indictment, *see* Arrest Warrant, ECF No. 3, and on July 12, 2023, Mr. DeFelice was arraigned by the Honorable United States Magistrate Judge Robert Spector, *see* Minute Entry, ECF No. 6. At that hearing, he entered pleas of not guilty and filed an oral motion for release, *see id.*, which was granted, contingent upon a $100,000 unsecured, non-surety appearance bond, and a promise to appear, *see* Order Setting Conditions of Release, ECF No. 7; Appearance Bond, ECF No. 8.

On October 18, 2023, Mr. DeFelice moved for a bill of particulars, ECF No. 17, and also moved to dismiss, ECF No. 18, and the government responded to each on November 8, 2023, *see* Gov't's Opp'n to Mot. for a Bill of Particulars, ECF No. 23; Gov't's Opp'n to Mot. to Dismiss, ECF No. 24. On December 1, 2023, Mr. DeFelice replied to the government's opposition against his motion to dismiss. *See* Def.'s Reply to Gov't Opp'n to Def.'s Mot. to Dismiss, ECF No. 28.

## II. <u>LEGAL STANDARD</u>

### A. <u>Bill of Particulars</u>

Pursuant to Federal Rule 7(f) of Criminal Procedure, the court may direct the government to file a bill of particulars, or a defendant may move for a bill of particulars

2

within 14 days of arraignment, or at a time permitted by the court.  "A bill of particulars allows a defendant to 'identify with sufficient particularity the nature of the charge pending against him, thereby enabling the defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Pulliam*, No. 3:21-cr-156(KAD), 2023 WL 8456105, at *1 (D. Conn. Dec. 6, 2023) (quoting *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir 1987)).  "Whether a bill of particulars should be provided at all and, if ordered provided, its scope and the extent of its specificity, are matters within the discretion of the trial judge." *United States v. Cohen*, 518 F.2d 727, 734 (2d Cir. 1975) (citing *United States v. Salazar*, 485 F.2d 1272 (2d Cir. 1973); *United States v. Koss*, 506 F.2d 1103 (2d Cir. 1974)).  "A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Machado*, 986 F. Supp.2d 288, 292 (S.D.N.Y. 2013) (citing *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), *aff'd* 875 F.2d 857 (2d Cir. 1989)).  Moreover, "a bill of particulars is unnecessary where the information sought is provided in discovery." *Id. (citing United States v. Jimenez*, No. 10 Cr. 316(VM), 2011 WL 308401, at *7 (S.D.N.Y. Jan. 28, 2011); *Bortnovsky*, 820 F.2d at 574).

  B. <u>Motion to Dismiss</u>

Pursuant to Federal Rule 12(b)(3) of Criminal Procedure, a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  "In ruling on a motion to dismiss, a court views the indictment as a whole and assumes its factual allegations to be true." *United States v. DeFilippo*, 685 F.

Supp. 3d 129, 134 (D. Conn. 2023) (citing *United States v. Litvak*, No. 3:13-cr-19(JCH), 2013 WL 5740891, at *2 (D. Conn. Oct. 21, 2013)).

"Since federal crimes are 'solely creatures of statute,' a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute." *United States v. Aleynikov*, 676 F.3d 71, 75–76 (2d Cir. 2012) (quoting *Dowling v. United States*, 473 U.S. 207, 213 (1985)).  "[A] motion to dismiss may be decided 'solely upon issues of law.'" *DeFilippo*, 685 F. Supp. 3d at 134 (citing *United States v. Was*, 684 F. Supp. 350, 351 (D. Conn. 1988), *aff'd*, 869 F.2d 34 (2d Cir 1989)).

### III. DISCUSSION

The court will address in turn the motions for a bill of particulars, and to dismiss.

#### A. Bill of Particulars[1]

Mr. DeFelice argues that Count One of the Indictment lacks sufficient information about his criminal charge, such that he may adequately prepare for his defense.  *See* Mem. of L. in Supp. of Mot. for Bill of Particulars 1, ECF No. 17-1.  In so arguing, Defendant seeks a bill of particulars containing the following four pieces of information:

1. The date(s) when the defendant allegedly dealt in or manufactured firearms.
2. The specific firearms, identified either by serial number or by manufacturer and model, and other identifying data.
3. The nature of the alleged conduct—such as manufacture (to include the government's definition of the same), purchase, or sale—as to each firearm.

---

[1] As noted above, Federal Rule 7(f) of Criminal Procedure states that a defendant may move for a bill of particulars "before or within 14 days after arraignment or at a later time if the court permits."  Although the motion for bill of particulars was filed well beyond this 14-day limit, the court accepts the motion as timely especially because the government has not voiced any objection to doing so.

    4. Whether the government applied the "added receiver theory" to classify certain firearms as short-barreled rifles.

*Id.* 1–2.  The court will consider each of these requests seriatim.

First, Mr. DeFelice requests a bill of particulars which would establish the dates when he allegedly dealt and manufactured firearms.  This request is denied.  Count One of the indictment alleges, "From in or about January 2020, the exact date being unknown to the Grand Jury, until on or about February 17, 2022," Mr. DeFelice engaged in the business of dealing in and manufacturing firearms. Indictment 1, ECF No. 1.  Indictments which state a crime's "time and place in approximate terms" consistently have been upheld by the United States Court of Appeals for the Second Circuit.  *United States v. Calhelha*, 456 F. Supp. 2d 350, 364 (D. Conn. 2006) (citing *United States v. Bernstein*, 553 F.2d 775, 786 (2d Cir. 1976)).  The indictment in this case sufficiently establishes the approximate date range during which Mr. DeFelice is alleged to have acted unlawfully. Anything more, such as the specific dates of "each transaction" have been adjudged "beyond the scope of the function of a bill of particulars." *United States v. Machado*, 986 F. Supp. 2d. 288, 293 (S.D.N.Y. 2013) (citing *United States v. Cohen*, 518 F.2d 727, 733 (2d Cir. 1975)).  Mr. DeFelice fails to explain why this degree of specificity is insufficient, or to offer legal support for any such claim. *See United States v. Hall*, No. 3:19cr65(VLB), 2021 WL 54169, at *4 (D. Conn. Jan. 6, 2021) (denying a motion that did not "set forth why the particulars requested [were] necessary aside from conclusory statements that they [were].");  *see also Pulliam*, 2023 WL 8456105, at *2 (ruling that the precise dates of the alleged unlawful conduct were not necessary "to avoid surprise").  Further, it is likely

5

that additional specificity as to the allegations can be gleaned through materials that have been supplied through the discovery process, as explained below.

Mr. DeFelice next requests identifying information about the firearms related to Count One.  The court denies this request without prejudice.  The government suggests such information has been made available through discovery.  *See* Gov't's Opp'n to Mot. for a Bill of Particulars 4, ECF No. 23.  Indeed, Sealed Exhibits C and D (ECF No. 20) which Mr. DeFelice himself attached to his motion to dismiss, clearly provide far more detail as to the government's allegations than are contained within the indictment.  And while Mr. DeFelice replied to the government's response to his motion to dismiss, *see* Def.'s Reply, ECF No. 28, he has not filed a reply as to its response to his motion for a bill of particulars, nor has he otherwise disputed its claim of detailed production since the government's bill of particulars response was issued back on November 8, 2023.  Because a bill of particulars is not necessary where the information sought by the accused has been (or will be) provided through discovery or other means beyond the indictment, Defendant's motion is denied.  *See United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999).  Still, Mr. DeFelice may refile his motion, should he still lack legally sufficient clarity from discovery.  *See United States v. Sistrunk*, No. 3:20-CR-00085(KAD), 2022 WL 2527971, at *5 (D. Conn. July 7, 2022).

Third, Mr. DeFelice seeks a description of "what steps constituted manufacturing," because he "should not have to guess which theory the government is pursuing."  Mem. of L. in Supp. of Mot. for Bill of Particulars 2, ECF No. 17-1.  This request is denied, as the Second Circuit has been clear that a bill of particulars "is not intended . . . as a means of learning the government's evidence and theories."  *United States v. Barnes*, 158 F.3d

662, 665 (2d Cir. 1998); see *United States v. Feola*, 651 F. Supp. 1068, 1123 (S.D.N.Y. 1987), *aff'd without opp.*, 875 F.2d 857 (2d Cir. 1989) (ruling that "courts have refused to treat a bill of particulars as a general investigative tool for the defense, or as a device to compel disclosure of the Government's evidence of its legal theory prior to trial"). Here, Mr. DeFelice does not seek information "necessary" to prepare his defense, but information that "would merely be helpful" in culling the potential legal theories the government may seek to advance. *United States v. Ferguson*, 478 F. Supp. 2d 220, 226 (D. Conn. 2007) (citing *United States v. Young & Rubicam*, 741 F. Supp. 334, 349 (D. Conn. 1990)). Accordingly, the request is denied.

Finally, Mr. DeFelice seeks to be informed whether the government will use the "added receiver theory" to classify the items detailed at Count Two of the indictment. Mem. of L. in Supp. of Mot. for Bill of Particulars 2, ECF No. 17-1. This request is denied for the same reason that the third request was denied. Through this request, Mr. DeFelice again attempts to use the bill of particulars as a device for understanding the government's legal theory, this time regarding the charge at Count Two. As the requested information is potentially helpful, but not necessary to prepare a defense, the request must be denied.[2] *See United States v. Hugley*, 2017 WL 6343664, at *3–4 (W.D.N.Y. 2017) (citing *United States v. Henry*, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994)).

### B. **Motion to Dismiss**

In an accompanying motion, Mr. DeFelice also moves to dismiss the indictment, citing *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022). *See* Mem.

---

[2] The government also has indicated that it has produced certain reports from the Bureau of Alcohol, Tobacco, Firearms, and Explosives which would be responsive to this request. *See* Gov't's Opp'n to Mot. for a Bill of Particulars 4–5, ECF No. 23.

in Supp. of Def.'s Mot. to Dismiss 2, ECF No. 18-1 ("Mot. to Dismiss"). Essentially, he claims that he is being prosecuted because he "neglected to pay the federal government" while engaging in the conduct alleged in the indictment, *id.* at 2, and he contends that such prosecution violates the Second Amendment under the two-step *Bruen* test established by the Supreme Court of the United States, *see id.* at 4–6.

For the purpose of his motion, Mr. DeFelice accepts as true the government's allegations that he marketed his business of providing certain firearms-related services[3] to his community. *See id.* at 2–3. When undercover officers solicited his services, he allegedly "buil[t]" a "multi-caliber firearm," to sell to those officers, *id.* at 3, and gave them a tour of his home and entrepreneurial workshop, *see id.* at 3–4. Thereafter, the officers obtained a warrant to search the defendant's home. *See id.* at 4. The search yielded "numerous firearms, parts, and gunsmithing equipment," which served as the basis for the indictment. *See id.* Count Two of the indictment alleges that Mr. DeFelice possessed "two short-barreled rifles and a silencer" which are subject to National Firearms Act (NFA) regulation. *Id.* Further investigation confirmed that Mr. DeFelice had a "valid Connecticut pistol permit with 173 transfers on it between May 2013 and May 2021." *Id.*

After careful, thorough review, the court finds that Mr. DeFelice's challenges as to Counts One and Two of his indictment must fail.

### 1. *Count One – Unlicensed Firearms Dealing and Manufacturing*

Count One of the indictment charges Defendant with dealing in and manufacturing firearms without a proper license, in violation of Sections 922(a)(1)(A), 923(a), and

---

[3] One such service was "Cerakoting, a process by which a ceramic coating is applied to firearms that (1) protects them from dirt and debris; and (2) alters [their] aesthetic appeal." *See* Mem. in Supp. of Def.'s Mot. to Dismiss 2, ECF No. 18-1 ("Mot. to Dismiss").

924(a)(1)(D) of Title 18 of the United States Code.[4]  *See* Indictment 1, ECF No. 1. Outlining the controlling test under *Bruen*, Mr. DeFelice argues that his conduct is protected by the Second Amendment, and that there is no "Founding Era analogue" to the current firearm licensing scheme, *see* Mot. to Dismiss 2, 12–14; Def.'s Reply to Gov't Opp'n to Def,'s Mot. to Dismiss 1–4, ECF No. 28 ("Def.'s Reply").

The court disagrees.

First, Mr. DeFelice misunderstands the scope of the *Bruen* decision.  The Second Amendment states that "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  However, the Second Amendment has "several limitations."  *Gazzola v. Hochul*, 88 F.4th 186, 195 (2d Cir. 2023) (citing to *District of Columbia v. Heller*, 554 U.S. 570, 592, 595 (2008)).  The Supreme Court in *Heller* spoke of one in particular: "laws imposing conditions and qualifications on the commercial sale of arms."  *Heller*, 554 U.S. at 626–27.  The "presumptive constitutionality" of such laws was affirmed in *McDonald v. City of Chicago*, 561 U.S. 742 (2010).  *Gazzola*, 88 F.4th at 195 (citing to *McDonald*, 561 U.S. at 786).  Based on this precedent, "Nothing in the Court's more recent decision in [*Bruen*] casts doubt on that understanding of the Second Amendment's Scope."  *Id.* (citing *Bruen*, 597 U.S. at 80 (Kavanaugh, J., concurring)).  As such, *Bruen* does not interfere with the regulation of commercial firearm activity relevant to the case at bar.

---

[4] 18 U.S.C. § 922(a)(1)(A) states that it shall be unlawful for any person 'except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in the interstate of foreign commerce." Section 923 functions alongside § 922(a) by outlining the process for applying for a license, while § 924(a)(1)(D) sets for the penalties for willfully violating provisions in chapter 18 of the United States Code.  *See* 18 U.S.C. §§ 923; 924.

Consequently, Mr. DeFelice's arguments do not overcome the presumption of constitutionality of these laws.  In coming to this conclusion, the court finds helpful the recent decision from the United States District Court for the Southern District of New York, which spoke directly to the constitutionality of 18 U.S.C. § 922(a)(1)(A).  *See United States v. Austin*, No. 22-CR-435(LAP), 2024 WL 1580079 (S.D.N.Y. Apr. 11, 2024).

Mr. DeFelice correctly notes that *Bruen* introduced a two-step test to review Second Amendment challenges to firearm regulation.  *See* Mot. to Dismiss 6.  First, the court must "analyze whether the plain text of the Second Amendment covers the conduct regulated by the modern firearm statute and, if so, then determine whether there are historical analogues to the statute that justify the firearm restriction imposed by the statute."  *Austin*, 2024 WL 1580079, at *4.

It is clear that the "plain text of the Second Amendment guarantees only the right of individuals to keep and bear arms, which is to be interpreted according to its normal and ordinary meaning."  *Austin*, 2024 WL 1580079, at * 7 (citing *Bruen*, 597 U.S. at 17, 20) (internal quotations omitted).  "The normal meaning of the Second Amendment's text provides only than an individual's right to 'possess arms' and to 'wear, bear, or carry' such firearms 'for the purpose of being armed and ready for the offensive or defensive action in a case of conflict with another person.'"[5]  *Id.* (quoting *Heller*, 554 U.S. at 583–84).

---

[5] For this reason, Mr. DeFelice's counterarguments to the contrary must fail.  He argues that his conduct is within the scope of the Second Amendment, citing cases from the United States District Court for the Northern District of Illinois.  *See* Def.'s Reply 1–4 (citing *Illinois. Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 937 (N.D. Ill. 2014); *Kole v. Village of Norridge*, 941 F. Supp. 2d 933, 945 (N.D. Ill. 2013)).  However, both cases from the Northern District of Illinois take as precedent a Seventh Circuit case in *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011), which, itself, took from the now-outdated approach of *Heller*.  *See id.* at 701 (holding that the first step in reviewing a Second Amendment challenge "requires a textual and historical inquiry into the original meaning").  The *Bruen* Court "declined" to adopt the two-part approach which "combines history with means-end scrutiny."  597 U.S. at 17.

Mr. DeFelice's relevant conduct, the manufacturing and dealing of firearms, does not fall within plain text of the Second Amendment.  The shortcomings of his argument can be gleaned from his own briefing, which attempts to bridge the clear gap between "the right to own something" and "the right to make or sell it."  Def.'s Reply 1–2.  The plain text protects the former, but not the latter; the latter is best understood as a type of "implicit right" that instead might "lurk beneath the surface of the plain text."[6]  *Austin*, 2024 WL 1580079 (quoting *United States v. King*, 646 F. Supp. 3d 603, 607 (E.D. Pa. 2022)); see *United States v. McNulty*, 684 F. Supp. 3d 14, 19 (D. Mass 2023) (holding that the defendant's attempt to engage in "commercial sale of firearm" was not covered by the Second Amendment); *United States v. Flores*, 652 F. Supp. 3d 796, 800–01 (S.D. Tex. 2023) (holding that "selling guns at wholesale or retail" does not fit into the plain meaning of the text of the Second Amendment).

Mr. DeFelice's argument particularly is undermined by the fact that he was engaged in a commercial transaction.  *See* Mot. to Dismiss 3–4 (accepting as true, the allegations that Defendant marketed his business and sold a customized/manufactured firearm for $2,500).  The decision in *Bruen* did not upend the existing Supreme Court jurisprudence which presumed the constitutionality of "laws imposing conditions and qualifications on the commercial sale of arms."  *Heller*, 554 U.S. at 626–27.  Indeed, the holding of *Bruen* emphasized the existing understanding that the "plain text" of the Second Amendment protects the right to "carry[] handguns publicly for self-defense."  *Bruen*, 597 U.S. at 32.  To agree with Mr. DeFelice would be to extend the reach of the

---

[6] Indeed, the Southern District of New York also upheld the constitutionality of an abutting regulatory provision, 18 U.S.C. § 922(a)(3), by finding that it "only minimally affects the ability to acquire a firearm[.]" *United States v. Libertad*, 681 F. Supp. 3d 102, 109 (S.D.N.Y. 2023) (quoting *United States v. Decastro*, 682 F.3d 160, 165 (2d Cir. 2012)).

plain text of the Second Amendment to commercial transactions—either manufacturing or dealing—in a way which "transform[s]" and distorts the right as recognized by the Supreme Court. *Austin*, 2024 WL 1580079, at *8 (citing *Bruen*, 597 U.S. at 8–10). The licensing requirement of § 922(a)(1)(A) does not "prevent anyone from keeping and bearing arms," *Libertad*, 681 F. Supp. 3d at 112, precisely because it does not "necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amend right to public carry." *Bruen*, 597 U.S. at 38 n.9 (quoting *Heller*, 554 U.S. at 635). For these reasons, the defendant's arguments as to the Second Amendment's plain text fall short.

Finally, Mr. DeFelice argues that the fees involved in the current licensing scheme constitute an unconstitutional restraint on his Second Amendment rights. Def.'s Mot. 6. However, *Bruen* does not interpret the plain text of the Second Amendment in this way. In a footnote, *Bruen* posited that there may be situations where "lengthy wait times in processing license applications or exorbitant fees" could constitutionally deny "ordinary citizens their right to public carry." *Bruen*, 597 U.S. at 38 n.9. Mr. DeFelice is charged with engaging in firearms deals without a valid license. *See* Indictment 1, ECF No. 1; 18 U.S.C. § 923(a). He suggests that the licensing fee to operate as a firearms dealer is exorbitantly high. Def.'s Mot. 6 (alleging that "$200 per sale fee" is too high).[7] However, the plain text of the Second Amendment protects an individual's right to possess and carry weapons—which is wholly separate from the "proprietor's right to sell firearms."

---

[7] Contrary to Defendant's argument, the licensing scheme codified at 18 U.S.C. § 923(a) requires applicants to pay fees on an annual, or triannual basis, rather than a fee per transaction or sale. *See, e.g.*, 18 U.S.C. §§ 923(a)(1)(A) (requiring payment for $1,000 per year); 923(a)(3)(B) (requiring payment of $200 for three years).

*Dark Storm Indus. LLC v. Cuomo*, 471 F. Supp. 3d 482, 504 n.15 (N.D.N.Y. 2020) (citing *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 690 (9th Cir. 2017)).  In this regard, "virtually all" district courts similarly have dismissed constitutional challenges to 18 U.S.C. § 923. *United States v. Young*, 639 F. Supp. 3d 515, 525–26 & n.3 (W.D. Pa 2022) (collecting cases).  This court now joins that line of cases in denying the instant motion to dismiss.

In sum, because Mr. DeFelice is unable to clear the first hurdle of the two-step test, the court need not wade into examining § 922(a)(1)(A) against its historical analogues.[8]

### 2. Count Two – Possession of Unregistered NFA Firearms

Count Two charges Mr. DeFelice with having "knowingly received and possessed firearms and a silencer not registered to him in the National Firearms Registration and Transfer Record" in violation of 26 U.S.C. §§ 5841, 5845, 5861(d), and 5871.[9]  Indictment 1–2, ECF No. 1.  The indictment specifically identifies two rifles with barrels of less than sixteen inches, and one silencer.  *See id.* at 2; *see also* 26 U.S.C. § 5845(a)(3) (defining short-barreled rifles as those with barrels less than sixteen inches long).

The challenge against Count Two rests on the Second Amendment and, therefore, the same two-step *Bruen* test applies.  Here, Mr. DeFelice argues that unlicensed ownership of short-barreled rifles and silencers is protected by the Second Amendment's

---

[8] However, the court again notes the decision of *United States v. Libertad*, in which the Southern District of New York found that a similar licensing provision of § 922(a)(3) was consistent with the country's history and tradition of firearm regulation.  681 F. Supp. 3d. at 112–15.

[9] 26 U.S.C. § 5861(d) states that it "shall be unlawful for any person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record."  26 U.S.C. § 5841 outlines the registration process, while § 5845 specifies the definitions of certain terms used in the chapter, and § 5871 sets the penalties for violating provisions within chapter 26 of the United States Code.  *See* 26 U.S.C. §§ 5841, 5845, 5871.

13

plain text, and he claims that there are no historical analogues to the modern day regulation. *See* Mot. to Dismiss 12–14; Def.'s Reply 1–3.

The court disagrees. The right to unlicensed possession of short-barreled rifles and silencers is not protected by the plain text of the Second Amendment.

First, as to short-barreled rifles, *Heller* clearly held that: "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." 544 U.S. at 625; *see United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517 (1992) (holding that short-barreled rifle is a type of "concealable weapon" which is "likely to be used for criminal purpose"). This conclusion from the Supreme Court of the United States reflected the understanding that "the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626. It did not escape the Supreme Court that there was a "historical tradition of prohibiting carrying of 'dangerous and unusual weapons.'" *Id.* at 627 (citations omitted). Therefore, rather than overrule *Heller*, the *Bruen* Court reaffirmed the Second Amendment protection of "the right of ordinary, law-abiding citizens to possess a handgun in the home." *United States v. Perez-Garcia*, 96 F.4th 1166, 1178 (9th Cir. 2024) (quoting *Bruen*, 597 U.S. at 9–10). Because they are not as commonly used as are the pistols discussed in *Bruen* and *Heller* and also not as commonly used for self-defense, short-barreled rifles seem to fall outside of the protection the plain text of the Second Amendment. *See United States v. Saleem*, 659 F. Supp. 3d 683, 694 (W.D.N.C. 2023) (citing *Bruen*, 597 U.S. at 32).

As for silencers, the Second Amendment protects an individual's right to "keep and bear Arms." U.S. Const. amend. II. "The most natural reading of 'keep Arms' . . . is to 'have weapons.'" *Heller*, 554 U.S. at 582. Conversely, "[a]t the time of the founding, to

14

"bear Arms" meant "to carry [weapons] for a particular purpose—confrontation."  *Id.* at 584.  Together, the plain language of the Second Amendment extends its protection to "all instruments that constitute bearable arms."  *Id.* at 582.

The court finds that silencers do not fall within the category of bearable arms.[10]  While not binding, the decision and reasoning from the United States Court of Appeals for the Tenth Circuit is persuasive.  In *United States v. Cox*, the Tenth Circuit ruled that a silencer cannot be considered a bearable arm because it is a "firearm accessory" and "not a weapon in itself."  906 F.3d 1170, 1186 (10th Cir. 2018).  Numerous jurisdictions have followed suit or have agreed with the rationale.  *See, e.g.*, *United States v. Hasson*, No. GJH-19-96, 2019 WL 4573424, at *4 (D. Md. Sept. 19, 2019), *aff'd* 26 F.4th 610 (4th

---

[10] On June 14, 2024, the Supreme Court of the United States determined that a bump stock is not a "machinegun" as defined in 26 U.S.C. § 5845(b).  *See generally Garland v. Cargill*, No.22-976, 2024 WL 2981505 (June 14, 2024).  At the time of writing, no other jurisdiction—let alone the Second Circuit—has applied the *Cargill* opinion to other issues of Second Amendment jurisprudence.  However, the court finds its analysis of the of the Second Amendment's plain text to be consistent with, if not supported by, *Cargill*.

The *Cargill* opinion refers to firearms as instruments, or "weapons" which may be fired or discharged by "engaging the trigger."  *Id.* at *3; *see id.* (identifying machineguns as a "category of firearms"); *see also id.* (distinguishing machineguns and semiautomatic firearms through the capability of the former to "fire multiple times, or even continuously, by engaging the trigger once").  Silencers do not have triggers, nor can they be fired or discharged by themselves.  *See United States v. Hasson*, No. GJH-19-96, 2019 WL 4573424, at *4 (D. Md. Sept 19, 2019) (holding that a "silencer is not itself used to 'cast at or strike another'"); *see also United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018) (holding that silencer is a "firearm accessory" and "not a weapon in itself").

The dictionaries upon which the Supreme Court relies affirm the same.  The Oxford English dictionary defines a silencer, in relevant part, as a "device attached to the barrel of a gun to reduce the sound of a shot."  *Silencer*, Oxford English Dictionary https://www.oed.com/dictionary/silencer_n?tab=meaning_and_use#22839099  (last visited June 17, 2024).  Separately, that dictionary defines firearm as a "weapon from which a missile can be propelled at speed by means of an explosive charge . . . [especially] one that is small and portable."  *Firearm*, Oxford English Dictionary https://www.oed.com/dictionary/firearm_n?tab=meaning_and_use#4231653  (last visited June 17, 2024).  The American Heritage Dictionary defines firearms in a similar way.  *See Firearm*, American Heritage Dictionary https://www.ahdictionary.com/word/search.html?q=firearm (last visited June 17, 2024) ("A weapon, especially a pistol or rifle, capable of firing a projectile and using an explosive charge as a propellant").

In all, the court's present interpretation of the plain text of the Second Amendment is supported by the understanding of firearms undergirding both the *Cargill* opinion and the dictionary definitions.

Cir. 2022); *Capen v. Campbell*, No. 22-11431-FDS, 2023 WL 8851005, at *17 (D. Mass. Dec. 21, 2023); *United States v. Cooperman*, No. 22-cr-146, 2023 WL 4762710, at *1 (N.D. Ill. July 26, 2023); *Ocean State Tactical, LLC v. Rhode Island*, 646 F. Supp. 3d 368, 387 (D.R.I. 2022); *Miller v. Garland*, 674 F. Supp. 3d 296, 314 (E.D. Va 2023); *Saleem*, 659 F. Supp. 3d at 696. The court finds this consistent with *Heller*, which described a weapon in the context of the Second Amendment as an instrument "held and used for self-defense." 554 U.S. at 636. Silencers are "not independently operable and do not serve any central self-defense purpose." *Saleem*, 659 F. Supp. 3d at 697.

In conclusion, the court finds that the unlicensed possession of short-barreled rifles or silencers is not protected by the plain text of the Second Amendment. The motion to dismiss Count Two of the indictment is denied.

## IV.    CONCLUSION

Accordingly, it is thereupon **ORDERED AND ADJUDGED** that Defendant's motion for a bill of particulars and motion to dismiss are **DENIED**. Should the parties seek to amend the existing scheduling order, ECF No. 34, they may file a motion requesting appropriate relief.

**IT IS SO ORDERED** in Hartford, Connecticut, this 17th day of June, 2024.

                                                                                    /s/
                                                                    OMAR A. WILLIAMS
                                                                    UNITED STATES DISTRICT JUDGE