UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:23-cr-116 (MPS) |
| | : | |
| v. | : | |
| | : | |
| NICHOLAS DEFELICE | : | February 21, 2025 |

### GOVERNMENT'S SENTENCING MEMORANDUM

For years, Nicholas DeFelice operated a firearm manufacturing and dealing business out of his basement, bypassing the federal laws designed to regulate such enterprises. When investigators searched his residence, they found an arsenal—including unregistered short-barrel riffles and a silencer, both regulated under the National Firearms Act ("NFA"). As a result of this conduct, DeFelice has now pled guilty to violating the NFA.

This was not a minor paperwork violation or an innocent oversight. DeFelice built, modified, and sold firearms outside the legal and regulatory framework designed to ensure weapons remain in lawful hands That is a serious offense.

At the same time, the government acknowledges DeFelice's mitigating circumstances. He has no criminal record, has done well on pretrial release, and his personal history includes significant trauma. Having weighed all these factors, the government believes a below-guidelines sentence that includes a period of incarceration followed by three years of supervised release would be the appropriate outcome.

I.      OFFENSE CONDUCT

Under federal law, anyone engaged in the business of manufacturing, dealing, or importing firearms must obtain a federal firearms license ("FFL"). This licensing requirement ensures that business engaged in the firearm business meet certain legal and regulatory requirements, including maintaining records and submitting to inspections. *See* 18 U.S.C. 923(; 27 CFR 478.41. Unlicensed firearm manufacturing and dealing undermines these safeguards, making it easier for weapons to enter untraceable circulation.

For several years, Nicholas DeFelice operated a firearm manufacturing and dealing business without an FFL. He sold the guns he built to individual customers and commercial dealers who held FFLs. He also placed them on consignment at various commercial firearm dealers throughout the state. He named his business "DeFelice Defense," and falsely claimed to be an FFL holder.

ATF began investigating DeFelice after a concerned citizen became suspicious that he was operating a firearm business without an FFL. The ATF determined that DeFelice never held an FFL, but nevertheless sold approximately 200 firearms between May 2013 and May 2020.

As part of the investigation, undercover ATF investigators purchased a firearm from DeFelice, which he manufactured at their request. When investigators obtained the firearm from DeFelice, he explained that he built it from the ground up and detailed the upgrades he had provided on the weapon. DeFelice showed the

undercover investigators his basement gun shop and reiterated that he did everything from start to finish in building firearms. He also stated that building AR style weapons was his specialty. DeFelice said he did not have any 10-round magazines, so he provided an investigator with a 30-round magazine, which DeFelice identified as "highly [expletive] illegal," and instructed "if anyone asks, you found it."

After this meeting, investigators executed a search warrant at DeFelice's residence. There, investigators found the following items of note:

- Two short barrel riffles
- 32 firearms from Mr. DeFelice's bedroom
- 35 firearms from Mr. DeFelice's basement/workshop, several of which were unmarked AR-style lower receivers
- A silencer with no serial number
- More than 28 high-capacity magazines
- Firearm parts
- Firearm packaging
- Financial and firearm documents

An ATF records check confirmed DeFelice did not register the firearms/silencer charged in Count Two, which investigators seized from his residence during the search.

## II. STATUTORY PENALTIES AND GUIDELINES CALCULATION

The maximum term of imprisonment is 10 years, and the maximum term of supervised release is three years. 26 U.S.C. § 5871. As for the guidelines, the presentence report calculates DeFelice's total offense level to 17. Because DeFelice falls in criminal history category I, the PSR calculates the guidelines range of imprisonment to be 24 to 30 months.

The government believes that, as a technical matter, an eight-level enhancement under U.S.S.G. § 2K2.1(b)(D) should apply based on the number of firearms DeFelice sold without a license. If that enhancement applies, then DeFelice would have a total offense level of 23, which would result in a range of 46 to 57 months of imprisonment, a fine range of $20,000 to $200,000, U.S.S.G. § 5El.2, and a supervised release term of one to three years. U.S.S.G. § 5D1.2.

Although the government's view of the guidelines calculation differs from the PSR, for the reasons below, the government believes a sentence below the guidelines range that the PSR calculates would be appropriate in this case.

### III. ARGUMENT

Following the Supreme Court's holding in *United States v. Booker*, 543 U.S. 220, 243- 245 (2005), which rendered the Sentencing Guidelines advisory rather than mandatory, a sentencing judge is required to: "(1) calculate[] the relevant Guidelines range, including any applicable departure under the Guidelines system; (2) consider[] the Guidelines range, along with the other § 3553(a) factors; and (3) impose[] a reasonable sentence." *See United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir. 2006). The § 3553(a) factors include: (1) "the nature and circumstances of the offense and history and characteristics of the defendant;" (2) the need for the sentence to serve various goals of the criminal justice system, including (a) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," (b) to accomplish specific and general deterrence, (c) to protect the public from the defendant, and (d) "to provide the defendant with needed educational or vocational

4

training, medical care, or other correctional treatment in the most effective manner;" (3) the kinds of sentences available; (4) the sentencing range set forth in the guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a). The Second Circuit reviews a sentence for reasonableness. *United States v. Canova*, 412 F.3d 331, 350 (2d Cir. 2005). The reasonableness standard is deferential and focuses "primarily on the sentencing court's compliance with its statutory obligation to consider the factors detailed in 18 U.S.C. § 3553(a)." *Id.* Here, these factors weigh in favor of a below guidelines sentence that includes a term of incarceration followed by 3 years of supervised release would reflect the seriousness of the offense and the need for deterrence balanced against the mitigating circumstances that DeFelice presents.

Start with the seriousness of the offense. DeFelice knowingly and repeatedly violated federal laws designed to regulate the circulation dangerous weapons. And he did so in a significant way. This was not a technical violation. Nor was it an innocent mistake. DeFelice operated an unlicensed firearm manufacturing business, modified and refinished weapons as part of a commercial enterprise, and possessed firearms subject to federal regulation without taking the steps necessary to do so lawfully.

The Gun Control Act (which governs FFL requirements) and National Firearms Act exist for a reason: they ensure firearms are properly registered, that transactions are documented, and that weapons do not disappear into untraceable

5

circulation. By ignoring these laws, DeFelice avoided federal oversight designed to prevent firearms from falling into the wrong hands.

The government acknowledges that it did not find direct evidence that DeFelice transferred firearms to prohibited persons.[1] But that fact should provide little comfort. Because DeFelice was not a licensed dealer, he was not subject to ATF inspection, and he did not maintain proper transaction records. Nor did his customers complete the necessary ATF documentation with their purchases. Thus, the government cannot verify how many sales he made or where all of those firearms ended up. That is precisely why federal law mandates that firearm manufacturers and dealers obtain an FFL and keep meticulous sale records—so firearms can be traced and illegal transfers can be detected.

General deterrence is also important in this case. Federal firearm laws depend on deterrence. People comply with firearm laws because they know the consequences of violating them are real. In that way, this case is not just about DeFelice. It is about the broader category of people who might consider engaging in similar conduct. A sentence that is too lenient would send the message that these violations carry no meaningful consequence. That is why incarceration, even if below the guidelines range, is necessary.

---

[1] For at least some of his transactions, DeFelice filed transfer paperwork with the Connecticut State Police Thich is how ATF arrived at an approximate number of sales. Of those transactions, the ATF did not discover any transfers to prohibited persons. But, as noted above, the ATF cannot verify that DeFelice filed transfer documents with the Connecticut State Police for *every* transaction.

6

Despite these considerations, there other factors that temper the government's sentencing position. First, DeFelice has no prior criminal history. He is in his 30s, and this is his first criminal offense—a significant factor in assessing his risk of recidivism. Second, DeFelice endured severe childhood abuse, as detailed in the PSR. While many defendants face difficult upbringings, the trauma DeFelice experienced was extreme. That history does not excuse his conduct, but it provides context for how he arrived at this point. Third, DeFelice has demonstrated stability and responsibility in other areas of his life. He has maintained steady employment on pretrial release and, by all accounts, has a strong relationship with his children – a notable contrast to his own childhood experience. These mitigating factors do not eliminate the need for incarceration, but they support a downward variance.

## CONCLUSION

Having weighed the seriousness of the offense and need for deterrence against the defendant's mitigating circumstances, the government believes that a below-guidelines sentence that includes a period of incarceration followed by three years of supervised release is minimally necessary to achieve the purposes of sentencing.

Respectfully submitted,

MARC H. SILVERMAN
ACTING UNITED STATES ATTORNEY

 /s/ *Nathaniel J. Gentile*

NATHANIEL J. GENTILE
ASSISTANT U.S. ATTORNEYS
FEDERAL BAR NO. ct28860
157 CHURCH STREET, FLOOR 25

7

NEW HAVEN, CT 06510
203-821-3700

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ *Nathaniel J. Gentile*
NATHANIEL J. GENTILE
ASSISTANT U.S. ATTORNEY